## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 08 B 30836 |
| STEVEN FIELDING GINSBERG, | ) | |
| | ) | |
| Debtor. | ) | Chapter 7 |
| ——————————————— | ) | |
| | ) | |
| STEPHEN LIVADITIS, | ) | |
| | ) | Adv. No. 09 A 120 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Judge Pamela S. Hollis |
| STEVEN FIELDING GINSBERG, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

This matter comes before the court on Steven Fielding Ginsberg's motion to dismiss the amended complaint filed by Stephen Livaditis. Defendant Ginsberg argues that the amended complaint, filed after the deadline for certain dischargeability complaints, does not relate back to the original complaint, and is therefore time-barred. For the reasons stated below, the court denies the motion.

### BACKGROUND

All well-pleaded factual allegations set forth in the complaint are taken as true for purposes of deciding a motion to dismiss. Certain of the allegations described below may be legal conclusions, but are recited herein for purposes of distinguishing between the original complaint and the amended complaint.

Allegations in the Original Complaint

Livaditis was a member of Adams 105, LLC (the "LLC"), as was Ginsberg.  The purpose of the LLC was to acquire the real property at 105 West Adams Street in Chicago (the "Adams Property").  Ginsberg was the LLC's attorney, and he owed a fiduciary duty to all members of the LLC.

In order to acquire the Adams Property, the LLC's members borrowed $2,250,000 from Alfred Koplin.  Each member of the LLC personally signed the promissory note for the loan.  Immediately after the LLC acquired the Adams Property, it "flipped" the real estate to a third party for $2,950,000.  These funds were placed in an escrow account over which Ginsberg exercised control.

Prior to the sale, Ginsberg told Livaditis that $500,000 of the sale proceeds would be used to pay Koplin, and that an additional $207,500 of the sale proceeds would also be used to pay Koplin.  These statements were false, Ginsberg knew that they were false, and he intended for Livaditis to rely on them.

Instead, without Livaditis' knowledge or authorization, Ginsberg directed, authorized and permitted the distribution of both the $500,000 and the $207,500 in sale proceeds to persons other than Koplin, even though Ginsberg knew the money should have gone to Koplin and had said that it would.

Livaditis knew that he had the ability to seek affirmative relief to require these funds to be applied to the Koplin loan, but Ginsberg made the statements described above in order to induce Livaditis to refrain from taking such action.  Livaditis believed the statements were true, and so did not take any such legal action.

2

The loan to Koplin was never repaid.  Koplin holds a judgment in the amount of

$4,627,629.28 against Livaditis and others.  Under the original complaint, Livaditis seeks

judgment in the amount of $707,500 and asks that the judgment be declared

nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(4).

Allegations in the Amended Complaint

Ginsberg told Livaditis on more than one occasion, and prior to Livaditis

executing the promissory note to Koplin, that Livaditis was either a member of, or a

member of a different limited liability company which was in turn a member of, the LLC.

One of the members of the LLC was a limited liability company owned by Ginsberg, who

was also the attorney for the LLC.  The purpose of the LLC was to acquire the Ádams

Property.

Ginsberg was the attorney for the LLC and owed a fiduciary duty to its members.

Based on upon statements Ginsberg made to him, Livaditis believed that Ginsberg was

acting as his attorney relative to the LLC, and relative to all issues involving the Adams

Property.

In order to acquire the Adams Property, $2,250,000 was borrowed from Alfred

Koplin.  Livaditis, Ginsberg and other individuals were listed as borrowers.  They also

personally signed the promissory note for the loan.  Livaditis never exercised any control

over these funds.  Ginsberg told Livaditis more than once that all the money received

from Koplin would be used to acquire the Adams Property.

Livaditis recently discovered that Ginsberg's statements about Livaditis'

membership in the LLC were false, and that Ginsberg knew they were false.

3

Additionally, prior to and at the time the promissory note was signed by Livaditis at Ginsberg's law offices, Ginsberg made the following statements to Livaditis: (1) Ginsberg had reviewed, on Livaditis' behalf, all documents related to the Koplin loan; (2) Ginsberg had studied all collateral for the loan; and (3) aside from the note, there was more than sufficient collateral to protect Livaditis' interests and pay off the loan, if necessary.

All of these statements – regarding Livaditis' LLC membership, as well as Ginsberg's review of the loan documents and the collateral -- were false, and Ginsberg knew they were false at the time. He made them in order to induce Livaditis to sign the note. He intended that Livaditis would rely on the statements, which he did. Livaditis never would have signed the promissory note if he had known those statements were false.

Based on the statements Ginsberg made to him, Livaditis believed that Ginsberg was acting as his attorney relative to the Koplin loan and the acquisition of the Adams Property. He did not have another attorney representing him. Ginsberg told Livaditis that he had prepared all the documents relating to the LLC and had participated in preparing documents relating to the acquisition of the Adams Property. Livaditis never received any of the LLC documents; they are in the possession of Ginsberg or his law firm.

The proceeds from the Koplin loan were to be used to acquire the Adams Property. The LLC entered into a contract to purchase the Adams Property. That contractual interest was assigned or transferred to a third party, and the LLC received

4

$2,950,000, which was placed in an escrow account. Ginsberg told Livaditis that he exercised control over this account.

Prior to the LLC assigning its interest in the contract, Ginsberg told Livaditis that $500,000 and an additional $207,500 of the sale proceeds would be used to pay Koplin, and that the debt to Koplin was more than sufficiently collateralized otherwise. These statements were false and Ginsberg knew it.

On more than one occasion, Livaditis asked Ginsberg to provide him with all documents relating to the LLC and to the Adams Property transaction. Ginsberg has refused to do so, even though he has told Livaditis that he has possession of all of these documents.

The loan to Koplin was never repaid. Koplin holds a judgment in the amount of $4,627,629.28 against Livaditis and others.

As a result of Livaditis' reliance upon Ginsberg's statements about Livaditis' membership in the LLC, about Ginsberg's review of the loan documents, his study of the collateral and its sufficiency to cover the Koplin loan, Livaditis has been damaged in the amount of more than $4,627,629.28, plus interest. The judgment is based on the promissory note, which Livaditis never would have signed if he had known these statements were false. He asks that the judgment be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### LEGAL DISCUSSION

Pursuant to Fed. R. Civ. P. 15, made applicable in adversary proceedings by Fed. R. Bankr. P. 7015:

**(a) Amendments Before Trial.**

> **(1) *Amending as a Matter of Course.*** A party may amend its pleading once as a matter of course:
>
>> **(A)** before being served with a responsive pleading; or
>>
>> **(B)** within 20 days after serving the pleading if a responsive pleading is not allowed and the action is not yet on the trial calendar.
>
> **(2) *Other Amendments.*** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

The original complaint was filed on February 13, 2009. The amended complaint was filed on April 16, 2009, before Livaditis was served with a responsive pleading to the original complaint; therefore leave to amend was not required. However, the time for filing a complaint objecting to dischargeability under 11 U.S.C. 523(a)(2), (a)(4) or (a)(6) had run on February 17, 2009. Consequently, the amended complaint must relate back to the date of the original complaint. If it does not, the amended complaint is time-barred and will be dismissed.

Relation back is governed by Fed. R. Civ. P. 15(c). For purposes of today's ruling, the relevant part of Rule 15(c) is:

> **(1) *When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when: . . . .
>
>> **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; . . . .

An amended complaint relates back when it is "sufficiently linked" to the claims in the original complaint. Disch v. Rasmussen, 417 F. 3rd 769, 776 (7th Cir. 2005). Claims are sufficiently linked if they are based on the "same core of facts." Newell v. Hanks, 283 F. 3rd 827, 834 (7th Cir. 2002). "If the factual situation upon which the action

depends remains the same and has been brought to defendant's attention by the original

pleading, the amendment will be timely." In re Fidanovski, 347 B.R. 343, 347 (Bankr.

N.D. Ill. 2006) (internal quotation omitted).

> If the new count has the same factual basis as the original count, and the
> same evidence could be used to support both counts, then the amendment
> arises out of the same transaction as the original pleading and relates back
> under Rule 15(c). However, an amendment which states a new claim
> based on a materially different set of facts will not relate back. **The basic
> test for relation back is whether the evidence with respect to the
> second set of allegations could have been introduced under the
> original complaint, liberally construed.**

In re Kruszynski, 150 B.R. 209, 211-212 (Bankr. N.D. Ill. 1993) (citations and quotations

omitted) (emphasis added).

Livaditis cited In re Olympia Brewing Co. Securities Litigation, 612 F. Supp.

1370, 1373 (N.D. Ill. 1986), for a different standard of review on the issue of relation

back: "[A] claim adding new factual allegations may relate back to the original pleadings

where a sufficiently close relationship exists between the original and the new claims."

While this standard is similar to the one described above, this court is bound by the

language described with approval by more recent precedent from the Seventh Circuit.

Disch, 417 F. 3rd at 776 (claims must be sufficiently linked); Newell, 283 F. 3rd at 834

(claims are sufficiently linked if they are based on the "same core of facts").

There is no question that some of the facts alleged in both complaints are the

same. The key issue is whether the similarities are sufficient to find that the complaints

have the same core of facts, and whether the evidence with respect to the allegations in

the amended complaint could have been introduced under the original complaint.

Both the original and amended complaint sought a finding of nondischargeability under § 523(a)(2)(A), which requires a finding of "false pretenses, a false representation, or actual fraud."

In the original complaint, Livaditis alleges that Ginsberg's statements that $500,000 and $207,500 from the sale proceeds would be paid to Koplin were false, and therefore induced Livaditis to refrain from taking legal action.

In the amended complaint, Livaditis drops the allegation that he would have taken action and sought injunctive relief to require those funds to be applied to the Koplin loan. Instead, he now avers that he would never have signed the promissory note in the first place if Ginsberg had not made the following false statements:

- Livaditis was a member of the LLC, or of a limited liability company that was in turn a member of the LLC;

- Ginsberg was acting as Livaditis' attorney;

- Ginsberg had reviewed, on Livaditis' behalf, all documents related to the Koplin loan;

- Ginsberg had studied all collateral for the loan; and

- Aside from the promissory note, there was more than sufficient collateral to protect Livaditis' interests and pay off the loan from Koplin, if necessary.

All of these statements are related to the Adams Property transaction, but to a different piece of the transaction than was the focus of the original complaint. The original complaint zeroed in on Ginsberg's representations that Koplin would receive a certain amount of the proceeds when the LLC sold the Adams Property to a third party. As a result of those representations, Livaditis asserts that he refrained from taking legal action and was consequently damaged.

The amended complaint goes back to the promissory note that first created that obligation to Koplin. Livaditis believed that Ginsberg was his attorney, and relied on statements Ginsberg made about his review of the note and of other collateral. Without Ginsberg's statements, alleges Livaditis, he never would have signed the promissory note in the first place.

When deciding a motion to dismiss, the court must view the complaint's allegations in the light most favorable to the plaintiff. Conley v. Gibson, 355 U.S. 41, 45 (1957). Viewed in this light, the allegations in the amended complaint offer additional evidentiary support for a finding of nondischargeability under § 523(a)(2)(A) based on the allegations in the original complaint.

If the court were conducting a trial on the original complaint, it would have to determine whether Livaditis was justified in relying on Ginsberg's statements about the distribution of the proceeds. Livaditis' belief about his membership in the LLC, about whether he believed he was receiving legal advice, about other matters on which Ginsberg advised him such as adequate collateralization of the note, all could have been relevant to this determination. These statements could have come in as evidence under the original complaint, and thus the amended complaint relates back.

Ginsberg argues that:

> [e]vidence that Plaintiff was a member of the LLC, that Defendant represented the LLC, that Defendant told Plaintiff that he would cause certain proceeds to be applied to a promissory note but did not do so, and that in reliance on these statements he did not exercise certain legal rights, may not be used to support a claim that Plaintiff was not a member of the LLC, that Defendant was his attorney, that Defendant told him he was a member of the LLC or another LLC, that the promissory note was adequately collateralized, and that in reliance on these statements he would not have signed the promissory note.

Motion at pp. 6-7.

9

But Ginsberg has it backward.  The question is not whether the allegations in the original complaint could have been used to support the claim raised in the amended complaint, but whether the allegations in the amended complaint could have been introduced as evidence in a trial on the original complaint.

If the allegations in the amended complaint would be relevant in such a trial, then the amended complaint must relate back.  Relevance is a very broad standard, according to Federal Rule of Evidence 401: "[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  The allegations in the amended complaint are relevant to the claim for relief in the original complaint, and "could have been introduced under the original complaint, liberally construed."  Kruszynski, 150 B.R. at 212.

Moreover, the Rule instructs us that an amendment relates back when the claim asserted arose out of the same transaction set out in the original pleading.  Defendant argues that the facts in the amended complaint concern "an event entirely separate from, and unrelated to, the disposition of sale proceeds."  Reply at 4.

The court disagrees.  It is not too broad of a view to find that the transaction in both the original and the amended complaints is the same.  Of course the transaction can be broken down into its component parts, a series of smaller, interconnected events.  But in the end, it is one transaction: An LLC, formed to acquire a piece of real estate, borrowed some money, flipped the property and the lender went unpaid.

In Pucci v. Litwin, 828 F. Supp. 1285 (N.D. Ill. 1993), plaintiffs originally filed a multicount complaint alleging fraudulent schemes to defraud investors, including a count

10

asserting RICO claims in connection with the sales of certain limited partnership

interests. Plaintiffs later amended their complaint to add a RICO claim based on the

limited partnership sales as well as certain coal mining investments.

> Defendants argue that the allegations involving the coal mining
> investments in Count VIII are new because none of the RICO allegations
> relating to the coal mining investments appeared in the [original]
> complaint . . . .

> This rule [15(c)] is to be liberally construed. Although the allegations
> involving the coal mining transactions are new, the court concludes that
> the new allegations can be characterized as the same conduct, transaction
> or occurrence as that attempted to be set forth in the previous complaint.
> The original complaint and the First Amended complaint involved the
> alleged inducement of investors into a fraudulent investment scheme by
> defendants including Litwin and C&E. So do the new allegations in
> Count VIII involving the coal deals. Accordingly, Count VIII relates back
> to the date of filing of the original complaint.

Similarly, the original complaint involved statements made by Ginsberg to

Livaditis about a part of the Adams Property transaction. Livaditis alleged that these

statements were false, and that he justifiably relied on them to his detriment. The same

allegations are made in the amended complaint, regarding different statements Ginsberg

made in connection with a piece of the Adams Property transaction. The amended

complaint relates back.

It is true that the prayer for relief seeks a far higher judgment amount in the

amended complaint than in the original complaint. This difference, however, is an

insufficient basis for the court to find that the complaints are not linked by the same core

of facts.

The court notes that Livaditis alleges that he did not discover certain facts until he

received documents from Ginsberg's counsel after the complaint was filed. Since

11

Livaditis prevails on this motion to dismiss, the court need not consider what appears to

be a claim of equitable tolling at this time.

## CONCLUSION

For all of the reasons stated above, the court denies the motion to dismiss.

Date: _____ JUL 2 8 2009 _____                    _____

PAMELA S. HOLLIS
United States Bankruptcy Judge