UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: ) | |
| ) | Case No. 08 B 30836 |
| STEVEN FIELDING GINSBERG, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| STEPHEN LIVADITIS, ) | |
| ) | Adv. No. 09 A 120 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge Pamela S. Hollis |
| STEVEN FIELDING GINSBERG, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter comes before the court on Steven Fielding Ginsberg's motion to dismiss the amended complaint filed by Stephen Livaditis for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable via Fed. R. Bankr. P. 7012. The underlying complaint seeks a finding that Ginsberg's debt to Livaditis is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The parties were provided with an opportunity to respond and reply, and they did so timely. The court has reviewed the complaint and the papers filed, and for the reasons stated below, grants the motion to dismiss with leave to amend the complaint.

## BACKGROUND

All the allegations set forth in the complaint are summarized in this Background section. In the Legal Discussion section, the court will identify those allegations that are well-pleaded, and thus entitled to an assumption of truth, as well as certain of those

allegations that are no more than conclusions. Although the complaint is viewed herein in the light most favorable to plaintiff, allegations that are no more than conclusions are not presumed to be true for purposes of deciding this motion to dismiss.

Ginsberg told Livaditis on more than one occasion, and prior to Livaditis executing a promissory note to Alfred Koplin, that Livaditis was either a member of, or a member of a different LLC which was in turn a member of, the limited liability company known as "Adams 105, LLC" (the "LLC"). One of the members of the LLC was a limited liability company owned by Ginsberg, who was also the attorney for the LLC. The purpose of the LLC was to acquire the real property at 105 West Adams Street in Chicago, Illinois (the "Adams Property").

Ginsberg was the attorney for the LLC. Based on upon statements Ginsberg made to him, Livaditis believed that Ginsberg was acting as his attorney relative to the LLC, and relative to all issues involving the Adams Property.

In order to acquire the Adams Property, $2,250,000 was borrowed from Alfred Koplin. Livaditis, Ginsberg and other individuals were listed as "borrowers." They also personally signed the promissory note for this loan (the "Loan"). Livaditis never exercised any control over these funds, nor did he receive any of the funds. Ginsberg told Livaditis more than once that all the money received from Koplin would be used to acquire the Adams Property.

Livaditis recently discovered that Ginsberg's statements about Livaditis' membership in the LLC were false, and that Ginsberg knew they were false at the time he made them. Ginsberg made the statements in order to induce Livaditis to sign the promissory note for the Loan. He intended that Livaditis would rely on those statements,

which he did. Livaditis never would have signed the promissory note if he had known Ginsberg's statements were false.

Additionally, prior to and at the time Livaditis signed the promissory note at Ginsberg's law offices, Ginsberg made the following statements to Livaditis: (1) Ginsberg had reviewed, on Livaditis' behalf, all documents related to the Loan; (2) Ginsberg had studied all collateral for the Loan; and (3) aside from the note, there was more than sufficient collateral to protect Livaditis' interests and pay off the Loan, if necessary.

All of these statements – regarding Livaditis' LLC membership, as well as Ginsberg's review of the loan documents and the collateral -- were false, and Ginsberg knew they were false at the time. He made them in order to induce Livaditis to sign the note. He intended that Livaditis would rely on the statements, which he did. Livaditis never would have signed the promissory note if he had known those statements were false.

Based on the statements Ginsberg made to him, Livaditis believed that Ginsberg was acting as his attorney relative to the Koplin loan and the acquisition of the Adams Property. He did not have another attorney representing him. Ginsberg told Livaditis that he had prepared all the documents relating to the LLC and had participated in preparing documents relating to the acquisition of the Adams Property. Livaditis never received any of the LLC documents; they are in the possession of Ginsberg or his law firm.

The proceeds from the Koplin loan were to be used to acquire the Adams Property. The LLC entered into a contract to purchase the Adams Property. That

contractual interest was assigned or transferred to a third party, and the LLC received $2,950,000, which was placed in an escrow account. Ginsberg told Livaditis that he exercised control over this account.

Prior to the LLC assigning its interest in the contract, Ginsberg told Livaditis that $500,000, and an additional $207,500 if necessary, of the sale proceeds would be used to pay Koplin, and that the debt to Koplin was more than sufficiently collateralized otherwise. These statements were false and Ginsberg knew it.

On more than one occasion, Livaditis asked Ginsberg to provide him with all documents relating to the LLC and to the Adams Property transaction. Ginsberg has refused to do so, even though he has told Livaditis that he has possession of all of these documents.

The Loan was never repaid. Koplin holds a judgment in the amount of $4,627,629.28 against Livaditis and others.

As a result of Livaditis' reliance upon Ginsberg's statements about Livaditis' membership in the LLC, about Ginsberg's review of the loan documents, his study of the collateral and its sufficiency to cover the Koplin loan, Livaditis has been damaged in the amount of more than $4,627,629.28, plus interest. The judgment is based on the promissory note, which Livaditis never would have signed if he had known these statements were false. He asks that the judgment be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## LEGAL DISCUSSION

<u>The Supreme Court's New Standard for a Motion to Dismiss</u>

In the Supreme Court's most recent discussion of the standard applied to a motion to dismiss, the Court began "by taking note of the elements a plaintiff must plead to state a claim...." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1947 (2009). Therefore, the court will begin this discussion with a review of the elements of a claim under 11 U.S.C. § 523(a)(2)(A).

> **(a)** A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--....
>
>> **(2)** for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>
>>> **(A)** false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

Livaditis titled Count I, the only claim for relief in the complaint, "False Representation/Actual Fraud." As the Seventh Circuit has explained, fraud does not need to take the form of a misrepresentation or misleading omission. <u>McClellan v. Cantrell</u>, 217 F. 3rd 890, 892-894 (7th Cir. 2000). The Circuit acknowledged in that same opinion, however, that "[m]ost frauds do involve misrepresentation," <u>id.</u> at 893, and such is the case in this proceeding. Having thoroughly reviewed this complaint, the court cannot find any factual allegations supporting a claim for fraud that do not involve an alleged misrepresentation, regardless of the title given to Count I. Consequently, the court need not engage in a <u>McClellan</u>-type analysis. See <u>In re Beetler</u>, 368 B.R. 720, 728 (Bankr. C.D. Ill. 2007).

In order to sustain a claim for false representation under § 523(a)(2)(A), Livaditis' complaint must provide sufficient factual allegations for the court to plausibly infer that:

(1) Ginsberg made a false representation of fact which he either knew to be false or made with reckless disregard for its truth; (2) he made this false representation with an intent to deceive; and (3) Livaditis justifiably relied on the false representation to his detriment. See Mayer v. Spanel Intern. Ltd., 51 F. 3rd 670, 673 (7th Cir.), cert. denied, 516 U.S. 1008 (1995), modified by Field v. Mans, 516 U.S. 59, 74-75 (1995) (reliance must be justifiable, rather than reasonable).

Having set forth the elements of the cause of action, the court will discuss the standard under which a complaint is reviewed to determine whether those elements were properly pled.

In Iqbal, the Supreme Court provided a two part test to determine whether a complaint meets the requirement of Fed. R. Civ. P. 8, made applicable in adversary proceedings by Fed. R. Bankr. P. 7008, that it contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

First, the court "can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1950. Well-pleaded factual allegations are taken as true, but legal conclusions are not. The allegations in the complaint are viewed in the light most favorable to the plaintiff.

As the court stated at the beginning of this opinion, all the allegations set forth in the complaint are summarized in the Background section of this opinion. Later in this Legal Discussion section, the court will identify those allegations that are well-pleaded, and thus entitled to an assumption of truth, as well as those that are no more than conclusions.

Second, having assumed the truth of those well-pleaded factual allegations, the court must "then determine whether they plausibly give rise to an entitlement to relief." Id.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

Id. at 1949 (citations and quotations omitted).

The Supreme Court did not eliminate the liberal federal notice pleading standard, but it did clarify it. Id. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Iqbal and its predecessor, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), provide a more rigorous test for complaints than that previously applied in this Circuit. The court will review this motion to dismiss under that stricter standard.

### The Complaint Fails To State a Claim Under 11 U.S.C. § 523(a)(2)(A).

To give rise to a claim under § 523(a)(2)(A), Livaditis' complaint must plead factual content that allows the court to draw the reasonable inference that Ginsberg made a false representation of fact which he either knew to be false or made with reckless disregard for its truth, that he made this statement with an intent to deceive, and that Livaditis justifiably relied on the false representation to his detriment. The court will discuss each element in turn.

<u>The complaint contains well-pleaded allegations that Ginsberg made false representations of fact.</u>

Livaditis alleged in the complaint that Ginsberg made the following false representations:

Livaditis was either a member of, or a member of a different LLC which was in turn a member of, the LLC;

Ginsberg was acting as Livaditis' attorney relative to the LLC, and relative to all issues involving the Adams Property;

All the money that the LLC received from Koplin would be used to acquire the Adams Property;

Ginsberg had reviewed, on Livaditis' behalf, all documents related to the Loan;

Ginsberg had studied all collateral for the Loan;

Aside from the promissory note, there was more than sufficient collateral to protect Livaditis' interests and pay off the Loan, if necessary;

Ginsberg had prepared all the documents relating to the LLC and had participated in preparing documents relating to the acquisition of the Adams Property; and

$500,000, and an additional $207,500 if necessary, of the sale proceeds would be used to pay Koplin, and the debt to Koplin was more than sufficiently collateralized otherwise.

While Livaditis has provided little detail about each of these allegations, such as exactly where and when the statements were made, these statements are specific enough to satisfy the criteria for surviving a motion to dismiss.

In <u>Iqbal</u>, certain allegations were not entitled to the assumption of truth. The Supreme Court found that "[t]hese bare assertions, much like the pleading of conspiracy in <u>Twombly</u>, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim . . .". 129 S. Ct. at 1951.

Other allegations in the <u>Iqbal</u> respondent's complaint were well-pled, such as the claim that "'[t]he policy of holding post-September-11[th] detainees in highly restrictive

conditions of confinement until they were "cleared" by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." Id. The respondent in Iqbal did not provide details of those discussions, such as the exact time and place where they occurred, or direct quotations from the conversations. But the allegations were more specific than a mere recitation of the required elements of the claim, and thus they were entitled to a presumption of truth during the consideration of a motion to dismiss.

If Livaditis had merely stated that Ginsberg made false statements to him, his complaint could not survive a motion to dismiss. But he provided more than that in his complaint, describing specific statements that he believes were lies Ginsberg told him. The detail of those allegedly false statements – when they were made, what was the context, how Livaditis came to learn that in fact the statements were false – will be uncovered through discovery, and eventually presented as evidence at trial. For now, the court has a sufficient structure of presumably false statements for this complaint to survive a motion to dismiss.

<u>The complaint does not contain well-pleaded factual allegations that Ginsberg knew his representations were false or that he made the representations with reckless disregard for their truth, or that Ginsberg made these statements with the intent to deceive Livaditis.</u>

There are no plausible allegations, however, that Ginsberg knew the representations described above were false, or that he made those statements with the intent to deceive Livaditis. Following are the only passages in the complaint that allege Ginsberg knew his statements were false and that he made those statements with an intent to deceive:

> 12. That, as Plaintiff has recently discovered, Defendant's statements to Plaintiff, that Plaintiff was a member of, or a member of a different LLC which in turn was a member of, the LLC were false, and Defendant

knew that the statements were false at the time he made them. Defendant made the statements to induce Plaintiff to sign the promissory note. Defendant intended that Plaintiff rely upon these statements. . . .

14. That Defendant's statements to Plaintiff that there was more than sufficient collateral, other than the promissory note signed by Plaintiff, to protect Plaintiff's interests and to pay off the loan, if necessary were false, and Defendant knew that these statements were false at the time he made them to Plaintiff. Defendant made the statements to induce Plaintiff to sign the promissory note. Defendant intended that Plaintiff rely upon these statements. . . .

19. That prior to the receipt of the said $2,950,000 by the LLC, and prior to the assignment of its contractual interest by the LLC, Defendant GINSBERG stated to Plaintiff that at least $500,000 of the sale proceeds would be directly utilized to repay the debt owed Koplin, and that the debt to Koplin was more than sufficiently collateralized otherwise, outside of the promissory note executed by Plaintiff. These statements were false, and Defendant knew them to be false at the time he made them. . . .

20. That prior to the receipt of the said $2,950,000 by the LLC, and prior to the assignment of its contractual interest by the LLC Defendant GINSBERG also stated to Plaintiff that an additional $207,500 of the sale proceeds would be directly utilized to repay the debt owed Koplin, if this money were needed to fully repay Koplin. These statements were false, and Defendant knew them to be false at the time he made them. . . .

Livaditis merely alleges, without more, that Ginsberg knew these statements were false at the time he made them, and that he intended for Livaditis to rely on these statements. These are conclusory allegations regarding required elements of a claim under § 523(a)(2)(A), and are not well-pleaded. As a result, the court cannot afford those allegations the assumption of truth.

Livaditis argues that because he has alleged that Ginsberg was the LLC's attorney and prepared all the relevant documentation, he knew that Livaditis was not a member of the LLC and that the Loan was not sufficiently collateralized.

Assuming it is true that Ginsberg was the LLC's attorney, it is plausible for the court to give the assumption of truth to the allegation that Ginsberg knew or should have

known about Livaditis' membership status in the LLC. But there is no support for the allegation, made in a conclusory fashion, that Ginsberg made that statement intending to deceive Livaditis into signing the promissory note.

As for the statements regarding collateralization of the loan and distribution of the proceeds from the sale to the third party, even if these statements were false, as the court will assume for purposes of this motion to dismiss, there is nothing in the complaint to support the assumption that Ginsberg _knew_ they were false, or that he acted with reckless disregard as to their truth. Ginsberg is an attorney, and there are no allegations that he had any specialized knowledge about this real estate, even given his alleged membership in the LLC. Indeed, perhaps the collateral _was_ sufficient at the time the statements were made, or Ginsberg _believed_ that it was. These allegations are no more than conclusions, are not well-pleaded, and are not entitled to the assumption of truth.

Finally, Livaditis did _not_ allege that Ginsberg actually prepared all the documents related to the LLC, the Loan and the purchase of the real estate. What he has alleged is that Ginsberg _told him_ that he did so, and further that he told Livaditis that he had reviewed all the Loan documents on Livaditis' behalf. These allegations may support another required element of the claim, that of justifiable reliance, but they have nothing to do with whether Ginsberg knew his representations were false, that he made the representations with reckless disregard for their truth, or that he made these statements with the intent to deceive Livaditis.

Plaintiff contends that the court can logically infer an intent to deceive from false representations which a defendant should know would induce another to act. See In re Jairath, 259 B.R. 308, 315 (Bankr. N.D. Ill. 2001). Before the court can make that logical

- 11 -

inference, however, the plaintiff must present well-pleaded allegations supporting the plausible conclusion that the defendant knew the representations were false, and that he should know those representations would induce the plaintiff to act.

The motion to dismiss will be granted, because with the exception of Ginsberg's potential knowledge about Livaditis' status as a member of the LLC, the complaint does not contain any well-pleaded factual allegations that Ginsberg knew certain representations were false or that he made the representations with reckless disregard for their truth. Furthermore, the complaint does not contain any well-pleaded allegations at all that Ginsberg made statements with the intent to deceive Livaditis, and the court cannot logically infer an intent to deceive from the allegations contained herein.

<u>The complaint does not contain well-pleaded factual allegations that Livaditis justifiably relied on Ginsberg's representations.</u>

Livaditis alleged that Ginsberg was the attorney for the LLC, and that he believed Ginsberg was acting as his personal attorney as well. Taking as true Livaditis' belief that Ginsberg was the LLC's attorney, the allegations that Livaditis relied on the rest of Ginsberg's representations are plausible. There is more than a sheer possibility that Livaditis would not have signed the promissory note without relying on those representations.

It is not enough, however, that Livaditis plead reliance. Whether that reliance was <u>justifiable</u>, especially as to whether Ginsberg was Livaditis' personal attorney, has not been well-pled. Livaditis never alleges <u>why</u> he believed Ginsberg was his attorney. It is not plausible for the court to conclude that Livaditis' reliance on Ginsberg's statements could have been justifiable if no facts are alleged to support Livaditis' belief that Ginsberg was his attorney. There are no allegations regarding retainer agreements or

contracts, or discussions about employment. The court cannot assume that Ginsberg was Livaditis' attorney simply because Livaditis did not retain another attorney to represent him in this transaction. Had Ginsberg acted as Livaditis' attorney in the past, or was this their first interaction? It is not appropriate for the court to hypothesize facts such as these, facts that could possibly support Livaditis' claim, if those facts were not alleged in the complaint.

Livaditis may have believed Ginsberg was his or the LLC's attorney and thus relied on his statements, but the complaint must support the plausible inference that Livaditis was _justified_ in believing Ginsberg was his attorney. If the complaint contains no well-pleaded allegations in support of an element of § 523(a)(2)(A), it is not plausible for the court to draw the reasonable inference that Ginsberg may have liability under that section of the Code.

It is not a question of whether Livaditis "did not do enough to nose out the truth." Mayer, 51 F. 3rd at 672. It is simply not plausible, based on the allegations currently before the court in the amended complaint, for the court to infer that Livaditis was justified in believing Ginsberg was his attorney. Without that piece of the puzzle, there is no foundation for the court to find it plausible that Livaditis would rely on any of Ginsberg's statements.

Certainly the facts supporting Livaditis' conclusion that Ginsberg was his attorney, or the LLC's attorney, are within Livaditis' knowledge. He knows why he would have drawn this conclusion, a conclusion which allegedly led him to rely on Ginsberg's statements. It is plausible to infer that a client would rely on statements made

by his attorney. But at this time, the court can only make that inference if there are well-pled allegations that Livaditis was justified in believing Ginsberg was his attorney.

## CONCLUSION

For all of the reasons stated above, the court grants the motion to dismiss. Plaintiff is given leave to amend the complaint. The order issued concomitantly with this Memorandum Opinion provides the dates on which an amended complaint as well as an answer or other pleading are due.

Date: **NOV 20 2009**

PAMELA S. HOLLIS
United States Bankruptcy Judge